FILED'10 NOV 1 10:51USDC-ORP

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

SHERRIE SHERRIFF,                                    Civ No. 08-6401-AA

       Plaintiff,                                    OPINION AND ORDER

   vs.

WINCO FOODS, LLC,

       Defendant.

---

Jeff Napoli
Gilroy & Napoli LLC
Attorneys at Law
P.O. Box 2150
15924 Quarry Road
Lake Oswego, Oregon 97035

Aaron Baker
888 SW 5th Avenue, Suite 650
Portland, Oregon 97204
    Attorneys for plaintiff

Thomas C. Sand
Michelle E. Barton
Miller Nash LLP
111 S.W. Fifth Avenue
3400 U.S. Bancorp Tower
Portland, Oregon 97204-3699
    Attorneys for defendant

1- OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Sherrie Sherriff filed this action alleging sex discrimination, hostile work environment, and retaliation in violation of Title VII and Or. Rev. Stat. Chap. 659A; retaliation for seeking workers' compensation in violation of Or. Rev. Stat. Chap. 659A; and intentional infliction of emotional distress ("IIED"). Specifically, plaintiff alleges that defendant terminated her because of her gender and because she filed a workmen's compensation claim and subjected her to a hostile work environment based on her gender. Defendant now moves for summary judgment on all of plaintiff's claims. The court heard oral argument by telephone on October 21, 2010. Defendant's motion is granted with respect to plaintiff's disparate treatment, gender discrimination retaliation, workers' compensation retaliation, and IIED claims, and denied on her hostile work environment claim.

## I. FACTUAL BACKGROUND

In May 2005, plaintiff was hired as a cashier at Store #40 by defendant WinCo Foods, LLC ("WinCo"). She worked as a cashier until her termination on September 20, 2006.

Plaintiff reviewed and signed WinCo's Cash Handling Policy ("Policy") before beginning her employment. The Policy states that if an employee has a till shortage greater than or equal to $30 per week, the employee will be subject to discipline under

2- OPINION AND ORDER

the Progressive Discipline Policy. Under the Progressive
Discipline Policy, there are three levels of discipline
applicable to instances of improper activity or inadequate
performance. First, an employee will receive a verbal warning
and a memorandum will be placed in her file. The second
violation will result in a written warning. The third violation
can result in either suspension or termination. However, written
warnings over a year old are not considered in applying the
Progressive Discipline Policy.

During her employment, plaintiff was disciplined for
violating the Policy and WinCo's Attendance Policy. On June 2,
2005, plaintiff received a policy consultation because her till
was short $96.54.[1] On July 9, 2005, she received a verbal
warning because her till was short $235.40 for the week of June
11, 2005. She received another written warning on December 5,
2005 for violating the Attendance Policy because she missed two
days of work and went home early on another day due to illness.
On April 24, 2006, she received her third written warning because
her till was short $49. On May 8, 2006, plaintiff was suspended
for again violating the Attendance Policy because she did not
complete her shift.

On July 17, 2006, Cassie Ortega ("Ortega"), the assistant

_____

[1] A policy consultation is not part of the Progressive
Discipline Policy and is not used to determine subsequent
punishments.

3- OPINION AND ORDER

manager, gave plaintiff a policy consultation for discussing a rumor about oral sex at work.[2]  During this consultation, plaintiff complained about Mike Holguin ("Holguin"), a co-worker, exposing himself to her.  Ortega did not take any notes of this complaint, but asked Holguin about the incident two or three days later.  Holguin denied the incident and no further investigation was conducted.  Plaintiff made no further complaints of sexual harassment to WinCo management until after her termination, although she alleges she was subjected to harassment by Holguin on almost a daily basis.

On July 20, 2006 plaintiff injured her back at work and subsequently filed a workers' compensation claim.  Plaintiff's injury prevented her from working as a cashier full-time, so WinCo allowed her to work as a greeter during the times she was unable to work as a cashier.  On July 24, 2006 she received another written warning for a till shortage of $102.47 during the week of July 1, 2006.  Each written warning received by plaintiff stated that any "further violation of any company policy will result in progressive disciplinary action up to and including termination."  Decl. of Barton in Supp. of Mot. for Summ. J., Ex. 1 at pp. 52-57.

---

[2]  During plaintiff's deposition, she states that this consultation occurred at the beginning of August.  Barton's Decl. Ex. 1 at 13, 120:1.  However, the file note Ortega wrote states that the consultation occurred on July 17, 2006.  Barton's Decl. Ex. 1 at 59.

On September 20, 2006, plaintiff was terminated because her till was $35 short.  When Russ Tripp ("Tripp"), the store manager, told her she was terminated, plaintiff stated that WinCo "had people around there that did sexual harassment all the time."  Barton Decl. Ex. 1 at 9, 104:22-25.  Plaintiff contends that at the time of her termination, male co-workers with worse disciplinary records, such as Holguin, were not terminated. Plaintiff also contends that WinCo terminated her for seeking workers' compensation.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The materiality of a fact is determined by the substantive law on the issue.  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence

of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

### III.   DISCUSSION

A.   Gender Discrimination

WinCo moves for summary judgment, arguing that plaintiff has not proffered sufficient evidence to establish a prima facie case of discrimination under Title VII, 42 U.S.C. § 2000e and Or. Rev. Stat. § 659A.030.   Plaintiff alleges three counts of discrimination: 1) disparate treatment; 2) hostile work environment; and 3) retaliation.

1.   Disparate Treatment

WinCo maintains that plaintiff fails to show that she suffered disparate treatment by WinCo. A person suffers disparate treatment in employment "when he or she is singled out and treated less favorably than others similarly situated on account of [gender]." McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1121 (9th Cir. 2004).   Disparate treatment claims require

6- OPINION AND ORDER

the plaintiff to prove that the employer acted with conscious intent to discriminate. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 805-06 (1973). Plaintiff may prove discriminatory intent by establishing a prima facie case of discrimination under the McDonnell Douglas framework or by presenting direct evidence of discriminatory intent. Id.; Costa v. Desert Palace, Inc., 299 F.3d 838, 855 (9th Cir. 2002).

I apply the McDonnell Douglas burden-shifting analysis, as plaintiff does not offer direct evidence of a discriminatory intent. Holguin is not a management-level employee with the authority to discipline plaintiff, and plaintiff has presented no direct evidence of discrimination as to Tripp.

To establish a prima facie case of gender discrimination under the McDonnell Douglas framework, plaintiff must show that: 1) she is a member of a protected class; 2) she performed her job according to her employer's legitimate expectations; 3) she was subjected to an adverse employment action; and 4) she was treated differently from similarly situated individuals outside of her protected class, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. Godwin v. Hunt Wesson, Inc. 150 F.3d 1217, 1220 (9th Cir. 1998); Henderson v. Jantzen, 79 Or. App. 654, 658, 719 P2d. 1322 (1986) (adopting the federal standard for a prima facie case set forth in McDonnell Douglas, 411 U.S. at 802).

7- OPINION AND ORDER

If these factors are met, plaintiff establishes a
presumption of discrimination. The burden then shifts to
defendant to set forth a legitimate, non-discriminatory reason
for its actions. Chuang v. Univ. of Calif. Davis, Bd. of
Trustees, 225 F.3d 1115, 1123 (9th Cir. 2000). If defendant does
so, plaintiff must demonstrate that the reason was merely a
pretext for a discriminatory motive by "either directly . . .
persuading the court . . . or indirectly . . . showing that the
employer's proffered explanation is unworthy of credence." Id.
(quoting Texas Dep't. of Comm. Affairs v. Burdine, 450 U.S. 248,
256 (1981)) (internal quotations omitted).

### a. Prima Facie Case

That plaintiff is a woman and thus a member of a protected
class is undisputed. Similarly, that plaintiff's termination was
an adverse employment action is undisputed. The parties dispute
the remaining two elements.

WinCo denies that plaintiff performed her job in accordance
with WinCo's legitimate expectations because she performed her
job unsatisfactorily. WinCo emphasizes plaintiff's undisputed
disciplinary actions, beginning shortly after she was employed
and continuing throughout her employment, and argues that these
disciplinary warnings and unsatisfactory performance undermine
her prima facie case. WinCo also argues that plaintiff fails to
provide any evidence that she was treated differently or less

favorably than similarly situated male employees.[3]  WinCo argues

that plaintiff must prove that similarly situated male employees

who violated the Cash Handling Policy were not terminated.  WinCo

maintains that Holguin was not employed as a cashier or any other

job that subjected him to the Cash Handling Policy and did not

have a comparable disciplinary history.[4]  See McDonald v. Santa

Fe Trail Transp. Co., 427 U.S. 273, 283 (1976); Garrett v. City

of San Francisco, 818 F.2d 1515, 1519 (9th Cir. 1987).

    Plaintiff contends her performance was at a level equal to

that of other employees, and thus satisfactory to WinCo who

tolerated other employees' numerous policy violations, such as

Holguin's.  Plaintiff maintains that her final till shortage

should not be considered because it was based on a customer

walking out of the store without paying, and Tripp does not

recall ever terminating an employee for a "walkout."  Pl.'s Ex. 3

at 2, 19:6-12.  Plaintiff further maintains that Holguin was

treated more favorably than she, in that WinCo never disciplined

Holguin for repeatedly making inappropriate and harassing sexual

comments during work, even though plaintiff received a policy

---

    [3]Plaintiff appears to argue that a female is a similarly
situated employee who was treated more favorably.  See Pl.'s
Resp. to Def.'s Mot. for Summ. J. at 11.  However, Ms. Whiting
belongs to plaintiff's protected class, and I do not consider her
treatment.

    [4] Holguin was a cashier when he began his employment, but
was never in that occupation while plaintiff was employed at
WinCo.

9- OPINION AND ORDER

consultation for once discussing a rumored incident of oral sex.

Plaintiff further points out that between 1995 and 2006, Holguin had ten violations of company policy that resulted in discipline, including nine violations of the Attendance Policy and one violation for slapping the back of his co-worker in the butchery department with a bloody hand.  Pl.'s Ex. 4 at 11-23. Plaintiff also presents evidence that Tripp treated Holguin more favorably than other, in that Tripp knowingly overpaid Holguin by $20,000 in 2006.  Pl.'s Ex. 3 at 6, 43:4-20.  Thus, given Holguin's disciplinary record and alleged improper conduct, coupled with Tripp's knowing overpayments, plaintiff contends she was treated differently than a male co-worker.[5]

I find it questionable whether plaintiff has established that she performed her job satisfactorily or was treated differently from similarly situated male employees given her employment record and undisputed violations.  Regardless, I find summary judgment appropriate because she fails to rebut WinCo's legitimate, non-discriminatory reason for her termination.

    b.  Legitimate Non-Discriminatory Reason and Pretext

WinCo offers a legitimate, non-discriminatory reason for

---

[5] However, plaintiff never alleges that Tripp knowingly overpaid Holguin because of his gender.  In fact, plaintiff only mentions the overpayment to prove that Tripp was friends with Holguin, not to prove that Holguin treated similarly situated male employees more favorably.  Accordingly, I do not find plaintiff's argument convincing.

plaintiff's termination: her several Cash Handling Policy violations. Plaintiff does not dispute these violations. Instead, she presents three arguments to support her claim of pretext.

First, plaintiff asserts that Ortega "wanted to find a way to fire" plaintiff and that Ortega felt plaintiff complained too much. Decl. of Mary Ross at ¶ 11. However, plaintiff offers no evidence connecting Ortega's statements to her ultimate termination, given that Ortega did not terminate her. Second, plaintiff alleges that she was not counseled on one of her till shortages. Regardless, even without one un-counseled shortage, WinCo acted within its Progressive Discipline Policy when it terminated plaintiff. Finally, plaintiff alleges that the disciplinary policy was applied differently to her than it was to a female co-worker and Holguin.

However, plaintiff's co-workers' disciplinary histories are distinguishable. Neither Holguin nor the female co-worker had such extensive Cash Handling Policy violations as plaintiff, and both accumulated policy violations over the course of five to eleven years as opposed to eighteen months. Regardless, plaintiff does not dispute that she committed numerous policy violations. Therefore, even assuming plaintiff has established a prima facie case of disparate treatment, she has failed to rebut WinCo's legitimate, non-discriminatory reason for terminating

11- OPINION AND ORDER

her.

### 2. Hostile Work Environment

To prevail on a claim for hostile work environment sexual harassment under Title VII, plaintiff must show that: 1) she was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; 2) the conduct was unwelcome; and 3) the conduct was sufficiently severe or pervasive as to alter the conditions of her employment and create an abusive working environment. Ellison v. Brady, 924 F.2d 872, 875-76 (9th Cir. 1991). The analysis under Oregon law is substantially the same. See Fred Meyer, Inc. v. Bureau of Labor & Indus., 152 Or. App. 302, 307, 954 P.2d 804 (1998) (Oregon law interpreted to require harassment that is "sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment"). WinCo does not dispute that plaintiff presents evidence to establish a prima facie case of hostile work environment. Instead, WinCo maintains that plaintiff's claim fails for three reasons: 1) the claim is time-barred; 2) Holguin's actions are not imputable to WinCo; and 3) WinCo took prompt remedial action upon notification of Holguin's actions.

### a. Timeliness of Claim

An employment discrimination complaint must be filed with the Equal Employment Opportunity Commission (the "EEOC") within

300 days after the "allegedly unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Similarly, a complaint must be filed with the Oregon Bureau of Labor & Industries ("BOLI") within one year of the allegedly unlawful practice. Or. Rev. Stat. § 659A.875. Plaintiff filed her BOLI complaint on September 17, 2007. Therefore, at least one instance of sexual harassment must have occurred on or after September 16, 2006.

The parties dispute when the last instance of alleged harassment occurred. WinCo contends that the alleged harassment ended in May 2006. In contrast, plaintiff contends the harassment continued up until her termination on September 20, 2006. Plaintiff relies on her deposition testimony that "[a]t the end of my employment [the harassment] stopped." Pl.'s Ex. 1 at 10, 191:8-12. Her declaration similarly alleges that during her employment Holguin's conduct stopped for only two brief periods lasting a couple of days.

According to WinCo, plaintiff's declaration is a "sham" that cannot prove any harassment occurred after May 15, 2006, the date Holguin moved to the receiving department. In support, WinCo quotes plaintiff's testimony from her hearing with the State of Oregon Employment Department where she stated certain conduct of Holguin lasted "until he got switched to receiving." Decl. of Barton in Supp. of Reply Re: Mot. for Summ. J. Ex. 2 at 4.

Defendant's argument is not persuasive. The discrepancy in

13- OPINION AND ORDER

plaintiff's statements is not sufficiently clear to preclude the determination that plaintiff was expanding on her prior testimony in her later deposition testimony and declaration. Plaintiff's statement that the harassment continued "until he got switched to receiving," specifically referred to Holguin rubbing his groin on plaintiff, and not his sexually charged remarks. See id. WinCo offers no other evidence that Holguin's alleged harassment ceased after May 2006.

Assuming for the purposes of summary judgment that the harassment continued up until her termination on September 20, 2006, plaintiff's claim is not time-barred.

> b. Employer Responsibility

Under federal and state law, a plaintiff may state a case for a hostile work environment against an employer for a co-worker's harassment under a theory of negligence. Nicholas v. Azteca Restaurant Enterprises, Inc., 256 F.3d 864, 875 (9th Cir. 2001); Haskins v. Owens-Corning Fiberglass Corp., 811 F. Supp. 534, 537 (D. Or. 1992) (citing Seitz v. Oregon, 100 Or. App. 665, 673 (1990)). "Employers are liable for failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew or in the exercise of reasonable care should have known." McGinest, 360 F.3d at 1119-1120 (quoting Ellison, 924 F.2d at 881 (internal citation omitted)); see also Or. Admin. R. 839-007-0550(5). Further, the employer's

14- OPINION AND ORDER

remedy must be effective and reasonably calculated to end the harassment. Ellison, 924 F.2d at 882. The failure to react promptly to a complaint, or to reprimand the harasser strongly, is evidence relevant to determine whether the employer took sufficient remedial action. Mockler v. Multnomah County, 140 F.3d 808, 813 (9th Cir. 1998).

Holguin's conduct may be imputable to WinCo if it knew or should have known about Holguin's actions. Plaintiff alleges that she was subjected to sexual comments and conduct from Holguin on almost a daily basis. Plaintiff contends that Holguin's comments included asking her if she wanted to have sex, go to an adult toy store, or be shown how to use sex toys. Plaintiff claims that on three or four occasions, Holguin asked plaintiff if she wanted to have a "threesome," and that Holguin once exposed himself to plaintiff while she was alone in the breakroom. On at least ten occasions, plaintiff alleges that Holguin would grind his groin on plaintiff's buttocks, often while aroused, while she was at her cashier's checkstand. Plaintiff maintains the harassment was continuous except for two brief periods of time when Holguin was transferred to another department on May 15, 2006 and after the employees watched a sexual harassment video. Further, plaintiff alleges that Ortega added to the hostile work environment by referring to older employees as "grannies" and using the term "chaca-chaca" around

15- OPINION AND ORDER

the store to refer to sex.  Tripp acknowledged that these actions would be violations of WinCo policy.

Plaintiff also provides evidence that Ortega knew about Holguin's sexually harassing conduct.  Decl. of Mary Ross at ¶ 5. According to plaintiff's co-worker, Mary Ross, Ortega discussed Holguin's inappropriate sexual behavior with Ross.  Additionally, WinCo received two anonymous letters in 2005 that accused store management of tolerating sexual comments.  In 2006, Holguin was investigated for sexual harassment.  Considered in their entirety, these facts are sufficient to create a genuine issue of material fact regarding WinCo's knowledge of Holguin's conduct or the hostile work environment at Store #40.

### c.  Remedial Action

Whether WinCo took prompt and effective remedial action is also in dispute.  An employer may establish an affirmative defense to vicarious liability where it promptly takes effective remedial action.  Burlington Ind., Inc. v. Ellerth, 524 U.S. 742, 765 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); 29 C.F.R. § 1604.11(d).

After plaintiff complained about Holguin's conduct to Ortega on July 17, 2006, Ortega investigated her claim by asking Holguin if he had exposed himself to plaintiff.  Ortega accepted Holguin's denial and never recorded any details of her investigation, pursued further inquiry, or issued any reprimand.

16- OPINION AND ORDER

WinCo maintains, despite admitting the investigation was not perfect, that Ortega's actions were prompt and effective because plaintiff did not experience any more sexual harassment. However, plaintiff alleges that the harassment continued after Ortega's investigation.  Further, plaintiff presents evidence that Ortega did not believe plaintiff's report because Ortega thought she complained too much.  Decl. of Mary Ross at ¶ 10. Plaintiff also alleges that Ortega had heard him make sexual comments and had informed a colleague that she would not be surprised if Holguin did expose himself.  Decl. of Mary Ross at ¶¶ 5, 7, 10.

Construing the facts in the light most favorable to plaintiff, WinCo knew that Holguin had engaged in inappropriate sexual behavior and had received complaints that such conduct was tolerated, and pursued no remedial action other than asking Holguin if he exposed himself.  Given these facts, plaintiff has raised sufficient genuine issues of material fact as to whether WinCo took appropriate remedial action.

Therefore, summary judgment for plaintiff's hostile work environment claim is denied.

3.  Retaliation

Plaintiff also alleges that she was terminated for complaining about her harassment.  To make out a prima facie case of retaliation, an employee must show that 1) she engaged in a

17- OPINION AND ORDER

protected activity; 2) her employer subjected her to an adverse
employment action; and 3) a causal link exists between the
protected activity and the adverse action.  Little v. Windermere
Relocation, Inc., 301 F.3d 958, 969 (9th Cir. 2002); Payne v.
Apollo College-Portland, Inc., 327 F. Supp. 2d 1237, 1245 (D. Or.
2004) (citing Harris v. Pameco Corp., 170 Or. App. 164, 178-179,
12 P.3d 524 (2000)).  If plaintiff presents a prima facie case,
then the burden shifts to the defendant to articulate a
legitimate, non-retaliatory reason for the action taken.  Little,
301 F.3d at 969.  If the defendant articulates a reason, then
plaintiff must demonstrate that the reason was merely a pretext
for a discriminatory motive using specific, substantial evidence.
Id.

    The parties do not dispute that plaintiff satisfies the
first and second prongs because plaintiff reported the alleged
sexual harassment, and she was terminated.[6]  The parties dispute
whether a causal link exists between the two.

    Plaintiff contends her reporting of Holguin's harassing
conduct and her termination are causally linked, but she offers
no direct evidence to support this assertion.  The only causal
nexus plaintiff sets forth is the fact that she was terminated

_____

    [6] Plaintiff contends that her complaint to Tripp after she
was terminated constituted a complaint to WinCo.  This complaint
will not be considered for her retaliation claim because no
adverse employment action took place after she made her second
complaint; she was already terminated.

18- OPINION AND ORDER

some months after she complained of Holguin's behavior.

However, during that time period it is undisputed that
plaintiff violated WinCo's employment policies.  Even if
plaintiff established a causal link, it is undisputed that
plaintiff violated the Cash Handling Policy warranting
termination under WinCo's Progressive Discipline Policy.  Thus, I
conclude that WinCo presents a legitimate, non-retaliatory reason
for her termination due to Cash Handling Policy violations.

Plaintiff contends that WinCo should have merely suspended
her because other employees with similar disciplinary records
were not terminated, and that Ortega allegedly told Ross that
plaintiff was the "next to go."  Decl. of Mary Ross at ¶ 12.
Plaintiff's evidence of unfavorable treatment is not persuasive
and she does not allege Ortega's comment was made after she
reported Holguin's harassment or that it otherwise was related to
her report of harassment.  Additionally, Tripp decided to
terminate plaintiff, not Ortega.  Thus, plaintiff presents no
evidence to show that WinCo's legitimate reason was merely
pretext for retaliation.

B.  Workers' Compensation Discrimination

Plaintiff alleges unlawful discrimination for utilizing the
workers' compensation system pursuant to Or. Rev. Stat. §
659A.040.  Specifically, plaintiff alleges that WinCo terminated
her employment because she filed a workers' compensation claim on

19- OPINION AND ORDER

July 20, 2006.

To prove retaliation based on injured worker status, plaintiff must establish that: 1) she invoked the workers' compensation system; 2) she experienced an adverse employment action in tenure, terms, or conditions of employment; and 3) a causal link between the two. See Kirkwood v. Western Hwy Oil Co., 204 Or. App. 287, 293, 129 P.3d 726, rev. denied, 341 Or. 197 (2006). Again, only the third prong is disputed here. WinCo maintains that plaintiff cannot establish a causal link between her invoking the workers' compensation system and her termination because she failed to meet WinCo's performance expectations as described above. Further, even if she established a prima facie case, WinCo has a legitimate, non-discriminatory reason for terminating plaintiff.

Similar to plaintiff's gender discrimination retaliation claim, plaintiff provides no evidence that causally links her termination and her participation in seeking workers' compensation. Plaintiff submits a declaration from a co-worker that Ortega disliked plaintiff "complaining about her injuries," disliked employees filing workers' compensation claims, and that Ortega "wanted to find a way to fire Ms. Sherriff." Decl. of Mary Ross at ¶ 11. However, as explained above, Tripp terminated plaintiff, not Ortega, and plaintiff offers no evidence to impute Ortega's motivation to Tripp. Thus, plaintiff is unable to prove

20- OPINION AND ORDER

a genuine issue of material fact regarding the third prong, or
rebut the legitimate, non-discriminatory reason for termination.

C.   IIED

Next, defendant moves for summary judgment on plaintiff's
claim of IIED.  Defendant argues that it cannot be liable for
failing to remedy a hostile work environment.  Alternatively,
defendant argues that plaintiff's IIED claim is barred by
Oregon's workers' compensation statutes.

A claim for IIED requires proof that: 1) defendant intended
to inflict severe emotional distress; 2) defendant's conduct did,
in fact, cause plaintiff to suffer severe emotional distress; and
3) defendant's conduct involved an extraordinary transgression of
the bounds of socially tolerable behavior.  McGanty v.
Staudenraus, 321 Or. 532, 543, 901 P.2d 841 (1995).  An
employer's failure to remedy work workplace harassment is
insufficient to support a claim for IIED.  Wheeler v. Marathon
Printing, Inc., 157 Or. App. 290, 307, 974 P.2d 207 (1998).  To
establish an employer's direct liability for a co-worker's
intentional torts, the plaintiff must prove: "(1) the tort is
committed by a person wielding 'the whole executive power of the
corporation'; and (2) the tortious acts were committed 'in behalf
of the corporation.'"  Harris v. Pameco Corp., 170 Or. App. 164,
172, 12 P.3d 524 (2000) (quoting Walthers v. Gossett, 148 Or. App
548, 556, 941 P.2d 575 (1997)) (internal citation omitted).

21- OPINION AND ORDER

Plaintiff alleges Holguin's conduct establishes a claim for IIED. However, he is not a party in this lawsuit and plaintiff has not provided any evidence that WinCo did anything more than fail to remedy Holguin's harassment. Further, plaintiff does not allege that WinCo is vicariously liable for Holguin's harassment.

Instead, plaintiff relies on several cases that allowed IIED claims against an employer. Pl.'s Resp. to Def.'s Mot. for Summ. J. at 18. These cases are not on point. For example, <u>Mains v. II Morrow, Inc.</u>, 128 Or. App. 625, 630-33, 877 P.2d 88 (1994), held the employer liable only after conducting an extensive vicarious liability analysis. Similarly, <u>Lantrope-Olson v. Department of Trasportation</u>, 128 Or. App. 405, 876 P.2d 345 (1994), involves a supervising employee harassing a subordinate and never analyzes the employer's liability because it was not in issue. Here, plaintiff has made no vicarious liability argument and has provided insufficient evidence to establish that WinCo is directly liable for Holguin's intentionally tortious conduct.

Plaintiff has not provided any evidence that Holguin wielded "the whole executive power" of WinCo. He had no authority to hire, fire, or discipline employees and while Holguin did have person-in-charge ("PIC") keys, he was not a PIC and only used the keys when the PIC's were not available. Pl.'s Ex. 4 at 3, 47:22-48:6. Further, plaintiff has not provided any evidence that Holguin's conduct was committed on behalf of WinCo. Accordingly,

22- OPINION AND ORDER

plaintiff's IIED claim fails because WinCo's mere nonresponsiveness to Holguin's conduct cannot support liability for IIED.

## CONCLUSION

In conclusion, I find that plaintiff has failed to present sufficient evidence to survive summary judgment on her disparate treatment, gender discrimination retaliation, workers' compensation retaliation, and IIED claims. However, I find that plaintiff presents sufficient evidence to survive summary judgment on her hostile work environment claim. Therefore, WinCo's Motion for Summary Judgment (doc. 28) is GRANTED with respect to plaintiff's disparate treatment claim, her gender discrimination retaliation claim, her workers' compensation claim, and her IIED claim.

IT IS SO ORDERED.

Dated this **3/5t** day of October 2010.

_____
Ann Aiken
United States District Judge